**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| **LEAH N. JINKINS, HEATHER MORGAN, and VICTOR MARTINEZ**, on behalf of themselves and all others similarly situated, | Case No. 2:22-cv-100 |
| Plaintiffs, | |
| v. | |
| **HAPPY STATE BANK & TRUST CO.,** | |
| Defendant. | |

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiffs Leah N. Jinkins, Heather Morgan, and Victor Martinez, individually and on behalf of all others similarly situated by, file this Class Action Complaint against the Defendant, and allege as follows:

**INTRODUCTION**

1.      This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, Happy State Bank & Trust Co. ("Happy State"), arising from the assessment and collection of (a) "Overdraft Fees" ("OD Fees") on accounts that were not actually overdrawn; and (b) the assessment of more than one insufficient funds fee ("NSF Fee") on the same item. These practices breach contractual promises made in Happy State's adhesion contracts.

2.      In plain, clear, and simple language, the checking account contract documents discussing OD Fees promise that Happy State will <u>only</u> charge OD Fees on transactions where there are insufficient funds to cover them.

3.      Similarly, the contract documents bar the assessment of more than one NSF Fee on the same item.

4.     Plaintiffs and other Happy State customers have been injured by Happy State's practices. On behalf of themselves and the putative class, Plaintiffs seek damages, restitution and injunctive relief for Happy State's breach of contract.

## PARTIES

5.     Ms. Jinkins is a natural person who is a citizen of Texas. At all relevant times, Ms. Jinkins was a resident of Dumas, Texas.  Ms. Jinkins has a checking account with Happy State.

6.     Ms. Morgan is a natural person who is a citizen of Texas. At all relevant times, Ms. Morgan was a resident of Pampa, Texas. Ms. Morgan has a checking account with Happy State.

7.     Mr. Martinez is a natural person who is a citizen of Texas. At all relevant times, Mr. Martinez was a resident of Dalhart, Texas. Mr. Martinez has a checking account with Happy State.

8.     Happy State is a large Texas-based bank with over $5 billion in assets. Happy State is headquartered in 100 East Main St., Happy, Texas.  Defendant may be served with process through its designated agent: PLA Services, Inc.; 701 S. Taylor, Ste. 501, Amarillo, TX 79101.

## JURISDICTION AND VENUE

9.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of the proposed Class resides outside of Texas; and (3) the aggregate claims of the putative Class members exceeded $5 million, exclusive of interest and costs.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Happy State is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in

this district.

<u>**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**</u>

11.     Ms. Jinkins, Ms. Morgan and Mr. Martinez each have checking accounts with Happy State.

12.     Happy State issues debit cards to its checking account customers, including Plaintiffs, which allows its customers to have electronic access to their checking accounts for purchases, payments, withdrawals and other electronic debit transactions.

13.     Pursuant to its standard account agreement, Happy State charges OD Fees for debit card transactions that purportedly result in an overdraft, and charges NSF Fees for "items" that are returned unpaid.

I.     <u>**HAPPY STATE CHARGES OD FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT**</u>

   A.     <u>**Overview of Claim**</u>

14.     Ms. Jinkins and Ms. Morgan bring this cause of action challenging Happy State's practice of charging OD Fees on what are referred to in this complaint as "Authorize Positive, Purportedly Settle Negative Transactions," or "APPSN Transactions."

15.     Here's how it works. At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, Happy State immediately reduces consumers' checking accounts for the amount of the purchase, sets aside funds in a checking account to cover that transaction, and as a result, the consumer's displayed balance reflects that subtracted amount. As a result, customers' accounts will always have sufficient available funds available to cover these transactions because Happy State has already sequestered these funds for payment.

16.     However, Happy State still assesses harsh $27 OD Fees on many of these transactions and mispresents its practices in its account documents.

3

17.     Despite putting aside sufficient available funds for debit card transactions at the time those transactions are authorized, Happy State later assesses OD Fees on those same transactions when they purportedly settle days later into a negative balance.  These types of transactions are APPSN Transactions.

18.     Happy State maintains a running account balance in real time, tracking funds consumers have for immediate use.  This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instance they are made.  When a customer makes a purchase with a debit card, Happy State sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's available balance.  Such funds are not available for any other use by the accountholder, and such funds are specifically associated with a given debit card transaction.

19.     That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has already been reduced to account for any earlier debit card transactions.  This means that many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

20.     Still, despite keeping those held funds off-limits for other transactions, Happy State improperly charges OD Fees on those APPSN Transactions, although the APPSN Transactions *always* have sufficient available funds to be covered.

21.     Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "unfair" and/or "deceptive" when:

> A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also

posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

22.     There is no justification for these practices, other than to maximize Happy State's OD Fee revenue. APPSN Transactions only exist because intervening checking account transactions supposedly reduce an account balance. But Happy State is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions—and it does the latter to the tune of millions of dollars each year. But Happy State was not content with these millions in OD Fees. Instead, it sought millions *more* in OD Fees on these APPSN Transactions.

23.     Besides being deceptive, unfair, and unconscionable, these practices breach contract promises made in Happy State's adhesion contracts—contracts which fundamentally misconstrue and mislead consumers about the true nature of Happy State's processes and practices.

These practices also exploit contractual discretion to gouge consumers.

24.    In plain, clear, and simple language, the checking account contract documents covering OD Fees promise that Happy State will only charge OD Fees on transactions that have insufficient funds to cover that transaction.

25.    In short, Happy State is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

**B.    Mechanics of a Debit Card Transaction**

26.    A debit card transaction occurs in two parts.  First, authorization for the purchase amount is instantaneously obtained by the merchant from Happy State.  When a merchant physically or virtually "swipes" a customer's debit card, the card terminal connects, via an intermediary, to Happy State, which verifies that the customer's account is valid and that sufficient available funds exist to "cover" the transaction amount.

27.    At this step, if the transaction is approved, Happy State immediately decrements the funds in a consumer's account and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

28.    Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration,

Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 25, 2009).

29. Sometime thereafter, the funds are actually transferred from the customer's account to the merchant's account.

30. Happy State (like all credit unions) decides whether to "pay" debit card transactions at authorization. After that, Happy State is obligated to pay the transaction no matter what. For debit card transactions, that moment of decision can only occur at the point of sale, at the instant the transaction is authorized or declined. It is at that point—and only that point—when Happy State may choose to either pay the transaction or decline it. When the time comes to actually settle the transaction, it is too late—the credit union has no discretion and must pay the charge. This "must pay" rule applies industry wide and requires that, once a financial institution authorizes a debit card transaction, it "must pay" it when the merchant later makes a demand, regardless of other account activity. *See* Electronic Fund Transfers, 74 Fed. Reg. 59033-01, 59046 (Nov. 17, 2009).

31. There is no change—no impact whatsoever—to the available funds in an account when this step occurs.

### C. **Happy State's Account Contract**

32. Plaintiffs' Happy State checking account is currently governed by Happy State's account documents, including the standardized Addendum to Terms and Conditions of Your Account, attached hereto as Exhibit A.

33. The Account Documents covering OD Fees provide that Happy State will not charge OD Fees on transactions that have sufficient funds to cover them at the time they are initiated.

34. Happy State's Account Documents in pertinent part state as follows:

7

Overdraft Privilege Plus is designed to pay all….types of non-sufficient fund items presented against your account instead of returning the items unpaid.

[…]

The Bank is not obligated to honor any overdraft on your account if the overdraft….exceed your overdraft limit. Overdrafts may not be paid if your account is not in good standing…payment of overdraft items is discretionary and not guaranteed.

35.     For debit card transactions, the credit union decides whether to pay a debit card transaction at the moment of authorization.  Happy State represents to its customers that it is one step, just like consumers using debit cards believe.

36.     Taken together with the other representations, a customer should not be charged an OD Fee if, at the time of presentment, the available balance is positive.

37.     For APPSN Transactions, which are immediately deducted from a positive account balance and held aside for payment of that same transaction, there are *always* funds to cover those transactions—yet Happy State assesses OD Fees on them anyway.

38.     The above promises indicate that transactions are only overdraft transactions when they are authorized into a negative account balance.  Of course, that is not true for APPSN Transactions.

39.     In fact, Happy State actually authorizes transactions on positive funds, sets those funds aside on hold, then fails to use those same funds to settle those same transactions.  Instead, it uses the secret posting process described below.

40.     Happy State charges OD Fees even when sufficient funds exist to cover transactions that are authorized and paid into a positive balance.  No express language in any document states that Happy State may impose OD Fees on any APPSN Transactions.

41.     The account documents misconstrue Happy State's true debit card processing and

overdraft practices.

42.    First, and most fundamentally, Happy State charges OD Fees on debit card transactions for which there are sufficient funds available to use to cover the transactions.

43.    Happy State assesses OD Fees on APPSN Transactions that **_do_** have sufficient funds available to cover them throughout their lifecycle.

44.    Happy State's practice of charging OD Fees even when sufficient available funds exist to cover a transaction violates a contractual promise not to do so.  This discrepancy between Happy State's actual practice and the contract causes consumers like Ms. Jinkins and Ms. Morgan to incur more OD Fees than they should.

45.    Next, sufficient funds for APPSN Transactions are actually debited and held from the account immediately, consistent with standard industry practice.

46.    Because these withdrawals take place at authorization, they cannot be re-debited later. But that is what Happy State does when its re-debits the account during a secret batching posting process.

47.    In reality, Happy State's actual practice is to assay the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and later at the time of settlement.

48.    At the time of settlement, however, an available balance *does not change at all* for these transactions previously authorized into good funds.  As such, Happy State cannot then charge an OD Fee on such transaction because the remaining balance has not been rendered insufficient due to the pseudo-event of settlement.

49.    Upon information and belief, something more is going on: at the moment a debit card transaction is getting ready to settle, Happy State does something new and unexpected by its

customers, during the middle of the night, during its nightly batch posting process. Specifically, Happy State releases the hold placed on funds for the transaction for a split-second, putting money back into the account, and then re-debits the same transaction a second time.

50.    This secret step allows it to charge OD Fees on transactions that never should have been subject to them—transactions that were authorized into sufficient funds, and for which Happy State specifically set aside money to pay them.

51.    This discrepancy between Happy State's actual practices and the contract causes accountholders to incur more OD Fees than they should.

52.    In sum, there is a huge gap between Happy State's practices as described in the account documents and Happy State's practices in reality.

**D.    Plaintiff Jinkins' Debit Card Transactions**

53.    As an example, on September 11, 2018, Ms. Jinkins was assessed an OD Fee in the amount of $27.00 for a debit card transaction that settled on that day. However, those transactions were authorized and paid into a <u>positive</u> account balance prior to those days. Further, at that time of authorization, positive funds were deducted immediately for the debit card transactions on which she was later assessed OD Fees.

**E.  Plaintiff Morgan's Debit Card Transactions**

54.    As an example, on December 26, 2018, February 8, 2018, and February 9, 2018, Ms. Morgan was assessed OD Fees in the amount of $27.00 each for debit card transactions that settled those days. However, those transactions were authorized and paid into a <u>positive</u> account balance prior to those days. Further, at that time of authorization, positive funds were deducted immediately for the debit card transactions on which she was later assessed OD Fees.

## II.    HAPPY STATE CHARGES MORE THAN ONE NSF FEE ON THE SAME ITEM

55.    Happy State's Account Documents allow it to charge a *single* $27 NSF Fee or a *single* $27 OD Fee when an item is returned for insufficient funds or paid despite insufficient funds.

56.    Happy State breaches its contract by charging more than one $27 NSF Fee on the same item, since the contract explicitly states—and reasonable consumers understand—that the same item can only incur a single NSF or OD Fee.

57.    Happy State's abusive practices are not standard within the financial services industry. Indeed, major banks like JP Morgan Chase—the largest consumer bank in the country—charge one NSF Fee per item, even if that item is resubmitted for payment multiple times.[1] And while some other banks credit unions engage in the same practices as Happy State, they clearly disclose those charges in the deposit agreements with their customers.

58.    Happy State's contract does not say that Happy State repeatedly charges customers multiple NSF fees on a single item. To the contrary, the contract indicates it will only charge a single NSF Fee or OD Fee on an item.

### A.    Plaintiff Jinkins' Experience.

59.    On numerous occasions on Ms. Jinkins' account, Happy State: (a) reprocessed previously declined items; and (b) charged an additional fee upon reprocessing, for a total assessment of *$54 in fees on each item*.

60.    For example, in August 2019, Happy State rejected payment of an item due to insufficient funds in Plaintiff's account and charged her a $27 NSF Fee for doing so. Plaintiff does

---

[1] As indicated by Chase's printed disclosures, an "item" maintains its integrity even if multiple processes are affected on it: "If we return the same item multiple times, we will only charge you one Returned Item Fee for that item within a 30-day period."

not dispute this initial fee, as it is allowed by Happy State's account contract.

61.     Unbeknownst to Plaintiff, and without her request to Happy State to reprocess the item, however, a few days later, Happy State processed the same item yet again. This time, Happy State paid the item into overdraft and charge Plaintiff *another* $27 NSF Fee for doing so. Happy State knew the item was the same item because it was marked as a "RETRY PYMT" on Plaintiff's statements.

**B.     Plaintiff Martinez's Experience.**

62.     On numerous occasions on Mr. Martinez's account, Happy State: (a) reprocessed previously declined items; and (b) charged an additional fee upon reprocessing, for a total assessment of *$54 in fees on each item*.

63.     For example, in June 2018, Happy State rejected payment of an item due to insufficient funds in Plaintiff's account and charged him a $27 NSF Fee for doing so. Plaintiff does not dispute this initial fee, as it is allowed by HAPPY STATE's account contract.

64.     Unbeknownst to Plaintiff, and without his request to Happy State to reprocess the item, however, a few days later, Happy State processed the same item yet again. Again, Happy State returned the item unpaid and charged Plaintiff *another* $27 NSF Fee for doing so.

**B.     The Imposition of Multiple NSF Fees on a Single Item Violates Happy State's Express Promises and Representations.**

65.     Happy State's Account Documents state that the Credit Union will assess a single fee of $27 for an item that is returned due to insufficient funds.

66.     According to the Fee Schedule, at most a *single* fee will be assessed when an "item" is returned or paid into overdraft:

Overdraft Charge……...$27 **per item**

NSF Item Charge……...$27 **per item**

Fee Schedule, Ex. B (emphasis added).

67.    According to the Addendum, Ex. A, "You will be charged an NSF item charge of 27.00 per each paid or return NSF item."

68.    The same check, automatic bill payment, or other electronic payment on an account is not a new "item" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the item.

69.    The disclosures described above never discuss a circumstance where Happy State may assess multiple fees for an item that was returned for insufficient funds and later reprocessed one or more times and returned again.

70.    Further, the Deposit Agreement never defines the word "item."

71.    Even if Happy State reprocesses an instruction for payment, it is still the same item. The Credit Union's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

72.    As alleged herein, Plaintiffs took only a single action to make a single payment; they therefore created only one item and may be charged only a single fee.

73.    In sum, Happy State promises that one $27 NSF Fee or one $27 OD Fee will be assessed "per item," and this must mean all iterations of the same instruction for payment. As such, Happy State breached the contract when it charged more than one fee per item.

74.    Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which the Credit Union will either pay (resulting in an overdraft item) or return (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does Happy State disclose that it will treat each reprocessing of a check or ACH payment as a separate item,

subject to additional fees, nor do Happy State customers ever agree to such fees.

75.     Customers reasonably understand, based on the language of the Account Documents, that the Credit Union's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional NSF Fees. In other words, it is always the same item.

76.     Banks and credit unions like Happy State that employ this abusive multiple fee practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Happy State never did.

77.     For example, First Hawaiian Bank engages in the same abusive practices as Happy State, but at least currently discloses it in its online Banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://www. fhb.com/ en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_ RXP1.pdf (last accessed September 25, 2019) (emphasis added).

78.     Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or**

**resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

*Consumer and Small Business Online Access Agreement*, Klein Bank ¶ H, https://www.klein bankonline.com/bridge/disclosures/ib/disclose.html (last accessed September 25, 2019) (emphasis added).

79.     Central Pacific Bank, a leading bank in Hawai'i, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection: "Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, may be resubmitted one or more times for payment, and a $27 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds." *Miscellaneous Fee Schedule*, Central Pacific Bank 1 (Feb. 15, 2019), https://www.centralpacificbank.com/PDFs/Miscellaneous-Fee-Schedule.aspx.

80.     BP Credit Union of Texas likewise states: "We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item."

81.     Happy State provides no such disclosure, and in so doing, breaches its contracts with accountholders, engages in bad faith conduct, and deceives its accountholders.

## CLASS ALLEGATIONS

82.     Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated. The Class includes:

(1) All persons who, within the applicable statute of limitations period, were charged multiple fees for the same transaction in a Happy State checking account; and

(2) All person with a Happy State checking account who, within the applicable statute of limitations, were charged a fee on an APPSN transaction.

15

83.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

84.     Excluded from the Classes are Happy State Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which Happy State Bank has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

85.     Common Questions of Law and Face Predominate. The questions of law or fact common to the questions of law or fact raised by the claims of each Class member. Further, Rule 23(b)(3) is satisfied in that these common questions of law or fact predominate over those affecting only individual Class members. Included within these common questions are whether Happy State:

      a.     Charged OD Fees on items when those items did not overdraw accounts;

      b.     Charged more than one NSF on the same item;

      c.     Breached its contract with consumers by charging OD Fees on items when those items did not overdraw accounts;

      d.     Whether Plaintiffs and the Class were damaged by Defendant's conduct and if so, the proper measure of damages.

86.     Numerosity: The members of the Class are so numerous that joinder is impractical. The Class consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Happy State's records.

87.     Typicality: The claims of Plaintiffs are typical of the claims of the Class in that they, like all Class members, were subjected to the same challenged conduct.  Plaintiffs, like all Class members, have been damaged by Happy State's misconduct in that they paid improper OD or NSF Fees.  Furthermore, the factual basis of Happy State's misconduct is common to all Class

members and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

88.    <u>Adequacy of representation</u>: Plaintiffs are committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiffs are an adequate representatives and will fairly and adequately protect the interests of the Class.

89.    <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Happy State, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Happy State's misconduct will proceed without remedy.  Moreover, given that the improper fees were assessed in a uniform manner, common issues predominate over any questions, to the extent there are any, affecting only individual members.

90.    Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

91.    <u>Notice to the Class</u>: Notice can be accomplished by direct mailing for most, if not

all, Class Members based on Defendant's records.

92.    The claims asserted herein are applicable to all Happy State customers who received the complained-of OD and NSF Fees from Happy State.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

93.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

94.    Plaintiffs and Happy State have contracted for credit union account deposit, checking, ATM, and debit card services.

95.    Happy State breached promises included in the account documents as described herein when it charged OD Fees on APPSN transactions that did not overdraw checking accounts and when it charged more than one NSF Fee on the same item.

96.    Plaintiffs and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

97.    Plaintiffs and members of the Class have sustained damages as a result of Happy State's breach of the contract.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and members of the Class demand a jury trial on all claims so triable and judgment as follows:

a.    Declaring Happy State's OD Fee policies and practices to be wrongful, unfair and unconscionable;

b.    Restitution of all OD Fees and NSF Fees paid to Happy State by Plaintiffs and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

18

c.  Pre-judgment interest at the maximum rate permitted by applicable law;

d.  Costs and disbursements incurred by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

e.  Such other relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand trial by jury.

Dated: May 10, 2022

Respectfully submitted,

THE EDWARDS LAW GROUP

603 W. 17th Street
Austin, TX  78701
Tel.  512-623-7727
Fax.  512-623-7729

By  /s/ Michael Singley
JEFF EDWARDS
State Bar No. 24014406
jeff@edwards-law.com
MICHAEL SINGLEY
State Bar No. 00794642
mike@edwards-law.com
DAVID JAMES
State Bar No. 24092572
david@edwards-law.com

J. Daren Brown
State Bar No. 24036271
dbrown@sjblawfirm.com
**Stockard, Johnston, Brown, Netardus & Doyle, P.C.**
1030 N. Western
P.O. Box 3280
Amarillo, Texas 79106 (physical) 79116-3280 (box)
Off. Ph. 806.372.2202/806.373.3000
Fax. 806.379.7799

Jeffrey Kaliel (Pro Hac Vice to be filed)
Sophia Gold (Pro Hac Vice to be filed)
**KALIELGOLD PLLC**
1100 14th Street NW, 4th Fl.
Washington, DC 20005
Telephone: (202) 250-4783
jkaliel@kalielpllc.com
sgold@kalielgold.com

*Attorneys for Plaintiff*